**Roland BALLIN, et ux., Appellants,**

v.

**POSTON HOME CARE CENTER CO., et al., Appellees.**

No. 4-87-00455-CV.

Court of Appeals of Texas, San Antonio.

March 9, 1988.

Rehearing Denied April 14, 1988.

Thomas M. Schumacher, Corpus Christi, for appellants.

Terence A. Willis, San Antonio, Donald J. Driscoll, Dallas, for appellees.

Before BUTTS and CHAPA, JJ., and BISSETT, Assigned Justice.

## OPINION

GERALD T. BISSETT, Assigned Justice[*].

Roland Ballin and wife, Debra Ballin, filed suit on December 3, 1984 against Poston Home Care Center Co. and its assignee, Associates Financial Services, Inc., to recover statutory penalties and attorney's fees for alleged violations of the Texas Consumer Credit Code, TEX.REV.CIV. STAT.ANN. art. 5069–2.01 *et seq.*, hereinafter the "Credit Code." Specifically, the plaintiffs sought a recovery under §§ 8.01 and 8.02 of the Credit Code due to alleged usurious language contained in the "Contract for Labor and Materials and Deed of Trust" that they had signed, hereinafter more particularly discussed. After a nonjury trial on stipulated facts, the trial court rendered a "take nothing" judgment against the plaintiffs, who have appealed.

Among other allegations, the plaintiffs alleged:

Defendants contracted for the right to receive time price differential, or finance charge, in excess of the maximum permitted by § 6.02 of the Credit Code;

In a single point of error, the plaintiffs contend:

The trial court erred in failing to render judgment in favor of appellants since the appellees contracted for the right to receive time-price differential in excess of, and more than double in excess of, the maximum permitted by law, thus entitling appellants to the penalties provided for in Tex.Rev.Civ.Stat.Ann. art. 5069, §§ 8.01 and 8.02.

On February 9, 1983, the plaintiffs (residents of Wilson County, Texas) entered into a retail installment transaction with the defendant Poston Home Care Center Co. in order to have vinyl siding and imitation stone installed on their house, located in Wilson County, Texas, which constituted their residential homestead. Two documents were executed on that day.

The first document, entitled "Retail Installment Contract," executed by the plaintiffs, as Buyers, and by the defendant Poston Home Care Center Co., as Seller, set forth the nature and description of the contemplated improvements and made the following disclosures which bear on this appeal, to-wit:

1. Cash Price .............. $5,600.00
2. Cash Down Payment .... $   0.00
3. Proceeds Advanced, etc... $   0.00
4. Unpaid Balance of Cash Price ................ $5,600.00
5. Credit Life Insurance .. $  443.25
6. Amount Financed ....... $6,043.25
7. Finance Charge/Time Price Differential ..... $2,821.75
8. Total of Payments ...... $8,865.00
9. Deferred Payment Price ................ $8,865.00
10. Number of Payments ...    60
11. Due Date of First (monthly) Payment .... 4/15/83
12. Amount of Each Payment ................ $  147.75

The document further provided that in the event of default by the plaintiffs that "the holder of this Contract may at its option accelerate the maturity of this Contract and declare the unpaid balance of the Total Payments due hereunder, less the total of any unearned FINANCE CHARGE ..." It also provided that in the event the plain-

* Assigned by the Chief Justice of the Supreme Court of Texas pursuant to TEX.GOV'T CODE ANN. § 74.003 (Vernon 1988).

tiffs should prepay in full the unpaid balance of the Contract before its final due date, or

> [I]f the holder of this Contract demands payment in full of the unpaid balance of the Total Payments due hereunder pursuant to the immediately preceding provision entitled 'Acceleration,' Buyer shall receive a refund credit of a portion of the FINANCE CHARGE, calculated in accordance with the ... Method set out in article 5069–6.02(10), Tex.Rev.Civ.Stat. ...

The document further stated that

> Buyer grants to Seller a Deed of Trust lien and Mechanic's and Materialmen's lien in the real property where the Goods will be located and installed ... as set forth in that certain Contract for Labor and Materials and Trust Deed of even date herewith executed by Buyer in favor of Seller ... to secure the payment of the Total of Payments set out above....

The document further stated that

> Secured Party (Seller) has no intent to contract for, receive or charge a time-price differential in excess of that permitted under the laws of the State of Texas, and in the event that any charge hereunder or under any instruments or documents associated herewith should result in a time-price differential in excess of that permitted by law, any and all such excess shall not be payable by Buyer....

The document concluded with an assignment of the "foregoing Retail Installment Contract and the Contract for Labor and Materials and Trust Deed described therein (herein collectively called 'Contract')" to Union Mortgage Company, Inc. The assignment was executed by the defendant Poston Home Care Center Co. on February 24, 1983.

The second document, entitled "Contract for Labor and Materials and Deed of Trust," hereinafter called the "Lien Contract" executed by the plaintiffs, was a deed of trust on the premises described therein to Jerry Lane, as Trustee, "to additionally secure and enforce the payment of said indebtedness and note ..." It also contained the following language that would be applicable in case of default.

> [T]he holder of said note may, at his option, declare the entire remaining unpaid balance of said note immediately due, and, if not immediately paid, then and in that event the Trustee or its successor is hereby authorized and empowered to sell said property at the courthouse door of said county ...

The written stipulations of facts show that the only facts before the trial court are those found in the foregoing "documents" and in the assignment of the "note" and "lien" from Union Mortgage Company, Inc., to State Savings and Loan Association of Lubbock and in the assignment of the "mortgage" from the latter to the defendant Associates Financial Services, Inc., and in the Completion Certificate signed by the plaintiffs on February 21, 1983, and by the defendant Poston Home Care Center Co. on February 24, 1983. The Lien Contract and the aforesaid assignments were recorded in the Mechanic's Lien Records of Wilson County, Texas.

The record does not contain any oral stipulations of fact, and the case was submitted to the trial court solely on the written stipulations. The "note" referred to in the Lien Contract and in the assignments from the defendant Poston Home Care Center Co. to Union Mortgage Company, Inc., and from the latter to State Savings and Loan Association of Lubbock, was not before the trial court and is not in the record before this Court.

■ Findings of fact and conclusions of law were neither requested nor filed. Therefore, the trial court's judgment must be upheld on any theory supported by the record. *Seaman v. Seaman,* 425 S.W.2d 339, 341 (Tex.1968). A letter from the trial judge to the attorneys of the parties in this appeal setting forth a basis for his judgment is attached to the defendants' (appellees') brief. The letter is not properly made a part of the appellate record and it will not be considered as findings of fact or conclusions of law. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978).

■ The rules of statutory construction dictate that statutes imposing penalties are strictly construed, and a person who seeks to recover a penalty must bring himself clearly within the terms of the statute. *Smart v. Tower Land and Investment Co.*, 597 S.W.2d 333, 340–41 (Tex.1980); *Hight v. Jim Bass Ford, Inc.*, 552 S.W.2d 490, 491 (Tex.Civ.App.—Austin 1977, writ ref'd n.r.e.). Since the Credit Code is penal in nature, it must be strictly construed. *Zapata v. Ford Motor Credit Co.*, 615 S.W. 2d 198, 199 (Tex.1981).

■ When a contract, construed as a whole, is doubtful, or susceptible of more than one reasonable construction, the court will adopt the construction which comports with legality, for it is presumed that the contracting parties intend to obey the law. Therefore, a court will not hold a contract to be usurious (and in violation of law) unless, upon a fair and reasonable interpretation of all its terms, it is manifest that the intention was to contract for more interest than allowed by law. *Walker v. Temple Trust Co.*, 124 Tex. 575, 80 S.W.2d 935 (1935). Unless the contract by its express and positive terms and provisions evidences an intention which requires a construction that unearned interest is to be collected in all events, the courts will construe it to mean that the parties intended that unearned interest should not be collected. *Shropshire v. Commerce Farm Credit Co.*, 120 Tex. 400, 39 S.W.2d 11, 12 (1931).

The case of *Jim Walter Homes, Inc. v. Schuenemann*, 668 S.W.2d 324 (Tex.1984), is relied upon by all parties as the case applicable to the issues involved in the case at bar. The parties differ only in their interpretation of that opinion. *Schuenemann* involved three documents that Jim Walter Homes had required the Schuenemanns to execute. They were: 1) a "Building Contract," 2) an "Installment Mechanic's Note," and 3) a "Mechanic's Lien Contract with Power of Sale." Those three documents comprised the "contract" in issue in that case.

The Building Contract showed that the Schuenemanns had an option to purchase a house for a "cash price" of $17,735.00 or a "time price" of $37,008.00, which included $19,273.00 time-price differential. The total payment of $37,008.00 was to be paid in one hundred eighty monthly installments of $205.60 each. The Schuenemanns elected to purchase the house on a time-price basis. The Building Contract contained the following provision:

The total of payments of $37,008.00 shall be evidenced by a promissory note payable in the time and manner aforesaid, which said promissory note shall be secured by a first (MORTGAGE), (DEED TO SECURE DEBT), (DEED OF TRUST), encumbering the above described property. The promissory note and (MORTGAGE), (DEED TO SECURE DEBT), (DEED OF TRUST), shall have customary covenants and conditions included therein and shall bear interest from maturity at the rate of 6% per annum until paid and *shall provide that in event of default in payment of any installment provided for hereunder for a period of thirty 30 days, the holder thereof may at its option declare all of the remainder of said debt immediately due and collectible and any failure to exercise said option shall not constitute a waiver of the right to exercise the same at any other time.* (Emphasis added).

The Installment Mechanic's Lien note stated:

It is understood and agreed that in the event of default in payment of any installment for a period of thirty days, *the holder of this note may, at its option, declare all the remainder of said installments due and said note will mature and it shall at once become due and payable* and the Mechanic's Lien or Deed of Trust Lien herein mentioned, either or both, shall become subject to foreclosure proceedings, as the holder may elect. (Emphasis added).

The Mechanic's Lien contract provided: Should owners make default in the punctual payment of said note, or any part thereof, as the same becomes due and payable ... *the holder of said note may,*

*at his option, declare the entire remaining unpaid balance of said note immediately due,* and, if not immediately paid then in that event the Trustee or his successor is hereby authorized and empowered to sell said property.... (Emphasis added).

Thus, the Building Contract in *Schuenemann* contained language which provided that in the event of acceleration of the note, the holder could declare the remaining unpaid balance of the *debt* due and payable. The Court held that this language was not usurious. Both the Note and the Mechanic's Lien Contract provided that in the event of acceleration, the holder of the *note* could declare the remaining unpaid balance of the *note* due and payable. The Court held that these provisions were usurious. The Court reasoned that the acceleration of the remaining unpaid balance of the *note* would necessarily include a request for payment of *unearned* time-price differential interest, whereas acceleration of the unpaid balance of the *debt,* as provided in the contract, would only be a request for payment of *earned* time-price differential. This holding is in harmony with the holdings in the earlier cases of *Walker v. Temple Trust Co.,* 124 Tex. 575, 80 S.W.2d 935 (1935) and *Clements v. Williams,* 136 Tex. 97, 147 S.W.2d 769 (1941).

Of particular importance to the decision in the instant case are the statements found on pages 330–331 of *Schuenemann,* wherein it was said:

> Although at the outset we construed all three instruments together to determine the *entire agreement* between the parties, we conclude that for the limited purpose of determining the terms of acceleration for which the parties contracted, the clear terms of the acceleration provisions in the installment note and lien contract should be interpreted without reference to the description thereof contained in the building contract. Courts have shown a reluctance to hold that acceleration of maturity provisions which clearly call for the collection of unearned interest are vitiated by mere intimations of contrary intent found else-

where in the contract. *See Manning v. Christian,* 124 Tex. 517, 81 S.W.2d 54 (1935); *Roark v. Dickinson Trust Co.,* 89 S.W.2d 278 (Tex.Civ.App.—Eastland 1936, no writ). Invoking the rule that the documents are to be construed together does not in any way imply that we must give weight to a purported description of acceleration terms *to be* agreed upon, when the terms of acceleration *actually* agreed upon are set forth in unambiguous language. We think this especially true when the purported description conflicts with the clear and consistent terms of a negotiable note and a mechanic's lien contract, instruments which were designed to stand on their own.

It was also stated on page 328 of *Schuenemann:*

> The simple act of contracting for usurious time price differential is in violation of the Credit Code and sufficient to trigger the penalties therein. *See Tanner Development Co. v. Ferguson,* 561 S.W.2d 777, 778 (Tex.1977) (on motion for rehearing). There need not be intent to actually charge time price differential which violates the Credit Code, but merely the 'intent to make the bargain made.' *See Cochran v. American Savings & Loan Ass'n of Houston,* 586 S.W.2d 849, 850 (Tex.1979).

In the course of discussion in *Schuenemann,* Justice Ray, speaking for the majority in footnote 6, page 333, made the following comment:

> [W]e fail to understand why acceleration clauses are drafted which do not include a sentence expressly disavowing any intention to collect excessive unearned interest or finance charges in the event the obligation is accelerated....

The factual situation is different in the case at bar from the facts in *Schuenemann.* Here, the only documents comprising the contract are the Retail Installment Contract and the Lien Contract. In *Schuenemann,* as noted, the contract consisted of three documents: the Building Contract, the Installment Note and the

Lien Contract. Here, there is no evidence that an installment note was ever executed by the plaintiffs, and despite the references made to the "note" in the Lien Contract and assignments, we will not presume that such a note was ever signed by the plaintiffs. Moreover, we cannot speculate as to the terms and provisions of such a note, assuming, *arguendo*, that a note was actually signed by the plaintiffs. We cannot determine whether the note, if it was signed by the plaintiffs, stated that the amount thereof was $8,865.00 (which would have included a time-price differential of $2,821.25), or whether it contained an acceleration clause which, upon default, would have matured the unpaid balance of the note. The recitals in the Lien Contract do not supply the terms and provisions of which may have been incorporated in the body of such note. Thus, the record is silent with respect to the amount of such note, the rate of interest thereon, the installments due thereunder, the provisions for acceleration, or whether it contained any provision which disavowed any intention to collect unearned interest in the event of acceleration.

It is not the lender's subjective intent to charge usury that makes a transaction usurious, but his intent to make the bargain that was made. *Alamo Lumber Co. v. Gold,* 661 S.W.2d 926 (Tex.1983). In determining what bargain the parties made, the intent of the parties, as expressed in the document constituting the transaction, is of paramount importance. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983). The question of usury must be determined by a construction of all the documents constituting the transaction, interpreted as a whole. *Nevels v. Harris,* 129 Tex. 190, 102 S.W.2d 1046, 1048 (1937). The rule applies "even though the result be to modify one of the instruments which standing alone, would have a different construction." *Rudes v. Field,* 146 Tex. 133, 204 S.W.2d 5, 7 (1947).

The Retail Installment Contract in the instant case does not contain an acceleration clause. When viewed and considered in its entirety, it does not contain a usurious provision. It does, however, contain clauses expressly disavowing any unearned interest or finance charges in the event the obligation is accelerated. While it may be argued that the Retail Installment Contract may look to an installment note and deed of trust for anticipated terms, conditions and default provisions relating to acceleration of the note, in the absence of the note itself, as is the case here, those terms, conditions and default provisions upon acceleration cannot be established.

The Retail Installment Contract, standing alone, is not usurious. The Lien Contract, standing alone, is not usurious. While the Retail Installment Contract is evidence the parties intended that the plaintiffs would execute as an installment note, to be secured by a deed of trust on the subject land, it clearly contemplates that upon acceleration of the note for any reason that the plaintiffs shall not be required to pay unearned finance charges (time-price differential). There is nothing in the two documents which show that the lender intended to collect unearned interest in the event of acceleration of the debt. There was no violation of the Credit Code.

The judgment of the trial court is affirmed.